*Note:  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-395

MARCH TERM, 2017

In re D.H. and A.H., Juveniles

}
}
}
}
}
}

APPEALED FROM:

Superior Court, Lamoille Unit,
Family Division

DOCKET NO. 46/48-10-14 Lejv

Trial Judge: Dennis R. Pearson

In the above-entitled cause, the Clerk will enter:

Father appeals from the termination of his parental rights in D.H. and A.H.  He argues that the court erred in making one of its findings and erred in concluding that termination of his rights was in the children's best interests.  We affirm.

Parents have a long history with the Department for Children and Families (DCF).  DCF first became involved with the family in 2006, and the issues that concerned DCF at that time with K.D., mother's child with another father, remained essentially the same through the birth of D.H. in July 2007, and A.H. in July 2013.  These issues include chronic homelessness and an inability to consistently provide for the family's basic needs, and later, an inability to control and supervise K.D. with respect to his interactions with the two younger children.  In October 2014, DCF filed a petition alleging that the children were in need of care or supervision (CHINS).  At that point, the family was again homeless and living out of their vehicle and sleeping in a tent.  Father was again briefly incarcerated, and K.D. was "out of control" and abusing his younger siblings.  Mother lacked funds for basic necessities.  The children were taken into DCF custody on an emergency basis.  In December 2014, parents stipulated that the children were CHINS.  Parents eventually stipulated to disposition and continued custody of the children with DCF.  In September 2015, DCF moved to terminate parents' rights.  Following a three-day hearing, which concluded in August 2016, the court granted DCF's request.

The court found, among other things, that mother was unable to follow through consistently with services, and she consistently failed to meet the expectations in the case plan.  The court explained that between March 2015 and September 2015, parents had to change housing eleven times, including several stints at different motels.  Father was arrested during this time.  Although father was required to regularly attend mental health treatment and anger management counseling sessions, he was not doing so.  Parents also had several threatening and hostile interactions with DCF staff and visitation supervisors during the summer of 2015.  This led to temporary stoppage of services, including Family Time coaching.  In August 2015, parents applied to resume supervised visitation, but visitation did not begin, in part because parents failed to demonstrate that they were in compliance with their mental health treatment plans.

While the children were in custody, father continued to be significantly involved in various criminal cases, with new charges, and violations of furlough and/or probation. This made it difficult for him, and mother, to maintain stability, including housing and employment. Despite anger management counseling, father continued to be volatile and his behavior led to violations-of-probation (VOP) charges and sanctions. In June 2016, father was charged with his fourth VOP for drinking alcohol and then getting into an altercation and physically resisting when his probation officers attempted to take him into custody. Father became increasingly out of control and combative, and then assaultive, as he was being processed, including making death threats against the officers and damaging personal and Department of Corrections (DOC) property. As of August 2016, father remained in DOC custody; his probation had been revoked and he was serving a two-year sentence. Father was still waiting to be released on furlough, with his inability to find approvable housing being the most significant impediment to his supervised reentry. Father was also facing new charges of simple assault on a police officer and unlawful mischief, stemming from the incident discussed above. Father has also been diagnosed with schizophrenia.

The court noted that father primarily blamed DCF and others for his inability to make substantial progress on the reunification plan. Father complained that parents were unable to make progress because DCF social workers failed to return their calls and emails. The court rejected this argument, crediting instead testimony by DCF social workers, "supported by their case file and notes," that there were very few, and very sporadic calls and contacts from parents for almost the entire two years that the cases were pending. The court found that parents' attitude toward DCF persistently thwarted whatever ability they might otherwise have had to take advantage of many of the services and support offered to them.

Parents are no longer a couple. Mother conceded that there was domestic violence in the home, witnessed by the children. Mother had not had in-person contact or visitation with the children for over a year by the time of the TPR hearing. Father's last in-person contact with the children was in July 2015.

Based on these and other findings, the court concluded that parents had stagnated in their ability to parent and that termination of their rights was in the children's best interests. It explained that father was still not effectively engaged in regular and continuous treatment and counseling for his mental health issues; he had no stable home; and he had no apparent ability to support and care for himself or his children. As of August 2016, father was still incarcerated, with no indication of when he might be released due to his failure to identify acceptable housing. Given father's criminal history and continuing inability to control his anger and volatility, there was a substantial risk that he would again become involved in further criminal proceedings even after his release, thereby further complicating his ability to provide a stable home life and permanency for D.H. and A.H. While father might at one time have had a parental bond with and shown substantial affection for his two children, the court found that he had not had any meaningful contact with D.H. and A.H. in many months, and that any bond that previously existed had largely dissipated. Father had not played a constructive role for some time in his children's lives. The court concluded that father's failure to position himself to resume parenting, in the almost two years since the cases were commenced, was overwhelmingly the result of his own choices and his own actions, and it was not due to factors beyond his control. This appeal by father followed.

Father first challenges the court's finding that the testimony of the social workers regarding parents' failure to communicate was "supported by their case files and notes." He asserts that the social worker who testified did not indicate that her testimony was based on case files and notes.

2

Even if the court erred in making this statement, the error is harmless. As we have explained, "where a finding of fact that supports the conclusion of the court is clearly erroneous, we find harmless error if other valid findings also support the court's conclusion." In re G.F., 2007 VT 11, ¶ 15, 181 Vt. 593 (mem.). The court's decision did not turn on this point. Instead, as detailed above, the court found that father made no progress toward being able to resume the care and custody of the children. He failed to engage in necessary treatment, he had no stable home, no ability to support himself or care for the children, he was incarcerated, he continued to commit crimes, and he remained unable to control his anger and volatility. The court's findings amply support its conclusion that father had stagnated in his ability to parent and that termination of his rights was in the children's best interests.

Finally, father argues that the court misstated the law concerning the relevance of a parent's inability to resume parenting due to factors beyond that parent's control. The court did not find in this case that father's failure to comply with the case plan was due to factors beyond his control, and thus, any error that might exist in the court's statement is immaterial. It is evident that the trial court applied the appropriate statutory standard in evaluating the children's best interests, and its decision is supported by the record. See In re G.S., 153 Vt. 651, 652 (1990) (mem.) (explaining that as long as trial court applied proper standard in evaluating child's best interests, Supreme Court will not disturb its findings on appeal unless they are clearly erroneous and will affirm its conclusions if they are supported by the findings).

Affirmed.


BY THE COURT:


_____
Paul L. Reiber, Chief Justice


_____
Marilyn S. Skoglund, Associate Justice


_____
Harold E. Eaton, Jr., Associate Justice

3